19-1229. And for the appellant is Mr. Tejada. You may begin. Thank you, Your Honor. Good morning and may it please the court. The district court plainly erred when it considered Wells Fargo a victim under the MVRA's enhanced restitution clause found at 18 U.S.C. 3.2.3.3.3.3.3.3.3.3.3.3.3.3.3.3.3.3.3.3.3.3.3.3.3.3.3.3.3.3.3.3.3.3.3.3.3.3.3.3.3.3.3.3.3.3.3.3.3.3.3.3.3.3.3.3.3.3.3.3.3.3.3.3.3.3.3.3.3.3.3.3.3.3.3.3.3 663 AA sub 2. It also erred when it suits Ponte raised Mr. Williams's offense level to 20. Mr. Williams requests this court to remand this matter back to the district court for resentencing on both the restitution and on the imprisonment sentence. I'll begin with the restitution. This court should employ the categorical approach to determine whether Wells Fargo is a victim under the MVRA for two reasons. First, the plain language triggers the categorical approach. The plain language of the MVRA triggers the categorical approach. Second, doing so would fit into Congress's overall intent for how the MVRA is supposed to capture a second level or a second universe of victims who are eligible for restitution. The MVRA uses the phrase involves as an conspiracy or pattern. Taylor, Mathis, Davis, Loughran, Leocal, all these cases out of the United States Supreme Court have indicated that when Congress uses the phrase involves as an element or includes as an element, it is understanding that the courts will then use a categorical approach to determining if the predicate offense triggers some sort of restitution in this matter or a crime of violence or something like that. Those cases do not turn on whether it's under the ACCA or if it's under an immigration context. Instead, as the government's case, this Collins case out of the Seventh Circuit emphasizes, there is a premium placed on the wording in the language. In fact, Collins itself says, look, just because you have elements or just because you don't have element, it's not dispositive involving as an element that language in the statute, but we definitely understand that the Supreme Court has placed a premium on that language. Using the categorical approach also fits with Congress's intent. The MVRA is designed to capture a second level of victims who are eligible for restitution if they are directly harmed by a defendant's conduct. Now, the reason this is important is because it creates a whole new universe of alleged victims, but only if they have been affected or suffered losses by a scheme, a pattern, or a conspiracy, i.e. a larger course of conduct or some sort of broader multiple steps that would affect these victims. The first clause of the MVRA obviously has direct and proximate causation and it is a non-categorical approach, but the second step includes the categorical approach because Congress wants to make eligible a second level of victims for restitution, but then also limit that by stating which crimes have to occur before those victims can get restitution. Are you saying that the primary victim here is not entitled to restitution? The primary victim is WebBank and they are entitled to restitution, yes. And really what were your primary argument here as I understood it was that the amount of restitution, you know, exceeded the plausible amount that could be awarded here and that that was therefore plein air. I don't think the argument is the amount, it is the who, your honor. The who is what the MVRA is discussing. Who is a victim eligible for restitution? And our argument is Wells Fargo does not fall into that category of those who as a categorical matter. In our case, we're arguing that it's a categorical matter. And if the court disagrees with our argument, then at a minimum, I think the case Speakman out of the Tenth Circuit requires a finding of causation. But for our purposes and our argument here, it's as a categorical matter, Wells Fargo is not eligible for restitution under the MVRA. Why should we accept the government's argument that even if it's plein air under some of the case law, that it doesn't meet the third and fourth prongs of plein air review? Why should why should we reverse on that basis? Right. The cases that are cited in our briefs, in our opinion, speak to this, your honor. They say that if a court orders restitution that is not allowed by law, i.e. Wells Fargo is not an eligible victim under the MVRA, that in of itself is plain error because the court has exceeded its authority. Remember that restitution is not an inherent power of the district courts. It only comes from Congress. And then Congress says, Hey, this is who the eligible victims are. And our argument is not Wells Fargo. So if now the district court has exceeded its authority and given restitution to Wells Fargo, the prongs two and three fall basically are met immediately. That's our argument. You're basically saying there's per se reversible plein air in these restitution cases. Is that an accurate interpretation of your position? Yes, sir. If this case were remanded and the district court worked to just eliminate Wells Fargo from the analysis and award the full amount to Web Bank and then let those two entities determine who's going to pay what back, would you have any issue with that? Because that loss was caused to Web Bank, right? You've said you've said that, I think. Yes. So if I understand correctly, your honor, if this remanded to the district court and the full amount of $1.2 million is issued to Web Bank and Web Bank and Wells Fargo go out on their own and correct? Yeah, that's the court just leaves that to them. And it is within its rights to award the full amount to Web Bank. And that's what that's what actually happened in this case is Web Bank and Wells Fargo entered into a civil settlement agreement. Web Bank sued Wells Fargo. The district court. I don't know. I don't think this court knows what happened, what the claims were, why Wells Fargo settled. I mean, in many civil claims, uh, both parties agree. Nobody did anything wrong. And so the background. But if we were to go back in the court were to say rewarding the one I'm awarding the 1.2 to Web Bank. End of story. Then would you claim that you had any issue? Or would the court be within its rights to do that? I think that if the court found that Web Bank was suffered $1.2 million in losses under that first clause of the M. V. R. A. That would be within the court's right to do that. And the defendant stipulated to that. Yes. But what happened was that then the court says Web Bank and Wells Fargo gets paid back. And our argument is that Wells Fargo, it's basically a windfall for Web Bank. Potentially, um, if Web Bank gets, uh, a portion of the proceeds and then also Wells Fargo does. Mr Williams has no, um, understanding wasn't involved, could not. There's nothing in the record as to why Web Bank and Wells Fargo agreed to a civil settlement. So the question then is if they have been, um, if Wells Fargo has already been, uh, uh, excuse me. The question is, is does Wells Fargo get to qualify as an eligible victim under the M. V. R. A. And our position is no, um, just Web Bank. So it's just a question of apportionment of allowed restitution, which is to say this case is not Gordon, where extra restitution is heaped on the defendant. The correct amount of restitution was ordered. It's just apportionment that you care about. I think that at the end, it could be seen that way. But our position is that it it's not just about apportionment. It's about who gets eligible restitution under the M. V. R. A. If we are correct, then there is never an apportionment or a payment to Wells Fargo because they are not a victim under the M. V. R. A. In which case, it's just the initial loan to, um, uh, Web Bank. Thank you. You if we disagree with you, Judge Balduck. No, go ahead. I'll wait here. Your question. I was gonna say if we disagree with you on the categorical approach and Judge Phillips is right. That is a question of apportionment and not amount. Um, how would you? How would your client really suffer any prejudice or, um, more specifically, how would it affect his substantial rights under the third crawling of Plain Air Review? All right. Our argument, Your Honor. A response to that is that we look to the Speakman case where our position would be that there is not a finding at the district court level as to causation, and that would be, um, a response. I think Speakman is actually pretty on point for our matter here. Yeah. Council in regards to the apportionment matter as Judge Phillips is just ask you during the sentencing phrase is that I look back right now. The question came up by the court was this is an apportionment matter. These two the two banks and, uh, got Mr Hamilton answered. Yes, it was. And what did the court want to do? He said, apportionment. So how do you get her? I don't even see an error then in regards to that. If your basis is plain air. All right. Uh, I think our response, Your Honor, is that if the district court since the district court ordered restitution Wells Fargo, it is legally not allowed to do that. And that setting aside the apportionment, it's just not allowed to do that because Wells Fargo is not a victim under the M. D. R. A. S. Enhanced restitution statute. It just can never even apportion that if we're correct on using the categorical approach. But if Judge Phillips just ask you if this goes back and the court just because you've already stipulated to the 1.15 million or whatever it is, that that is the amount owed. So what is your injury? If the court, if the parties themselves divided up what? What? What's the air? Well, the air is that and I'm not sure if I'm understanding the question, so I apologize, Your Honor. But the air is that the district court exceeded its authority in the injury to Mr Williams is that he should not have to pay for the civil settlement between Wells Fargo and Webb Bank. It's I agree that they said apportionment during the district court, and obviously we're here on plain air before your honor. So I am at this time, your honors, I would like to reserve the rest of my time unless there are any other questions. Council Mr Rockham for the government. It's it's over here for Milani. Good morning. I'm actually arguing for the government, Your Honor. I see. Sorry about that. It's all right. Good morning. May it please the court was before Milani for the United States. I want to go straight into the discussion about amount versus who can receive the restitution. If this case is not about what the amount that was ordered that 1.146 million that was ordered in that case, defendant cannot satisfy prongs three and four of plain error. As Chief Judge Tim Kovach explained under the there's no substantial right that is affected on behalf of defendant because he agreed to pay the particular amount. It's just is going to a different party. And if, in fact, this is remanded below with all the money to go to one thing, then Webb Bank can just a portion on its own. So I think that that is if the only dispute here is the who gets the money, then I think that the plain air case defendant cannot succeed on it. And also, under the fourth prong, I don't think he can succeed either because he is stipulated to a particular amount of restitution. The PSR set out the victims to who they would be or to who that money would be paid. And after many opportunities, defendant never objected. So I think holding defendant to that agreement is isn't plain air. Respond to the case that, um, that Mr Tahada mentioned that he thought really support third prong, namely about the need to show causation still. So if this case is a bad amount in that case, the Speakman case, I believe, is what opposing counsel was talking about. In that case, there was harm to Merrill Lynch from the defendant's behavior. He had forged checks and taken unauthorized money. But the losses that occurred later in the There was no basis in the record to conclude that they were connected to defendant's conduct. Not so here. And that's the big distinguishing point. The PSR states from Wedding and Wells Fargo, there are two different documents at the back at the end of the PSR, rather that state that they settled this lawsuit based on defendant's depositing of fraudulent checks, and they say that their their harm flowed from those deposits. Now, those deposits occurred during the course of the scheme. We know that from the PSR statement in the indictment time frame. So I think that this that distinguishes Speakman. Um, and I want to point out that the Alice Shurtov case, um, rejected a claim that a financial loss must occur during the temporal limits of the scheme and explained that certain types of criminal conduct could result in delayed or continuing financial losses. And so I think that also speaks to the plainness here. The combination of Speakman plus the Alice Shurtov case. Now I want to talk about why this court need not even take up the merits of the N. V. R. A. Interpretation question at all. I think that this case involves a waiver or invited error. Either way you look at it, there are different ways of counsel in regards to the waiver. You're about to go into. You can see that if we determine that the restitution order is unlawful, that he has not waived his right to appeal this matter. I don't agree with that, Your Honor. So I think that that I think that under the appellate waiver framework, the cases that have had an appellate waiver and a plea agreement. Those are the cases that talk about. You cannot waive the right to appeal an illegal restitution order. But on straight waiver or invited error, setting aside the appellate waiver, I mean, the language of case law is pretty reflective of this question because they say any error is invited or any error is waived. So in that case, depending on which waiver argument you're taking would would result in whether or not you have to resolve that claim. But just on a straight waiver or invited error, setting aside the plea, the plea appellate waiver. I think that this case you don't need to look at it at all. The the reason that this case is different from those cited in the reply brief is far more than just a failure to object to the stipulated restitution amount. The defendant agreed to it, discussed it multiple times in court. The court said, Do you understand these essential terms of your plea agreement? The defendant said yes. This number was no surprise in terms of it was in every edition of the PSR as it was going through different iterations. And the Wells Fargo statement, as well as the Webb-Bake statements, were attached to that last iteration of the PSR. So this sounds more to me like forfeiture than waiver. In other words, where does the defendant ever express that he understands that this distinction applies between who's a victim and who's not that he chooses to advise the court go forth? In other words, do you see what I'm saying? Why isn't it forfeiture instead of waiver? So it sounds like that sort of comes to a knowingly, perhaps, argument of whether there was like a knowing intention to waive this claim, perhaps. And that is waiver, right? A knowing. Right, exactly. Exactly. Well, I would bring you back to the the the stipulation, the plea agreement itself. The defendant asked the court to take this particular route, which it then did. And I will point out that under our- doesn't talk about Webb-Bake and Wells Fargo. It just gives a number. Right. And that number- Do we know from the record when the defendant did learn about Wells Fargo? I'm not sure. It was as soon as the PSR. It's Wells Fargo's in the PSR. But I think that the stipulation was higher than $800,000. So the stipulation in the plea agreement, defendant was on notice at that time that the restitution to which he was agreeing was not just the loan in count one to which he was pleading guilty. So I think that that takes away that that argument. The defendant knew that $1.146 million is far above $800,000. So he knew the stipulation and what it meant. I also think that that premise, that whether or not defendant understood he wasn't agreeing, whether or not he understood he was agreeing to pay a non-victim, I don't think the court needs to get there. I think under MVRA, under A2, the second definition of victim, Wells Fargo satisfies that definition. And I want to talk about why for a moment. That this court has never explained that that definition is categorical as an initial matter. So I think that that forecloses plainness. Nor does the text of A2 necessarily lead to that conclusion. There are some words that suggest a categorical approach to be sure, like element. But instead of has as an element, like the ACCA, for example, the MVRA says involves as an element, involves as an element. And I'd also disagree that the subsequent Supreme Court case, Mathis, made any such error plain. Mathis started from the presumption that the ACCA is interpreted or is applied categorically. It's the second sentence of the opinion. The question in Mathis was just how do we apply the categorical approach in this particular context? But I don't think Mathis speaks to whether the MVRA should be applied categorically. And I also disagree that doing so would further the intent of Congress. You know, the MVRA's purpose is to make victims whole to the extent practical without obviously providing a windfall, but to make victims whole. So I think a rigid categorical approach really cuts against that purpose. And even if a categorical approach is applied in this scenario, which for several reasons I don't think you need to get there, especially if Mr. Williams is not now contesting the amount at stake, in which case I think you can resolve this on plain error. But to the extent that you take up the categorical approach, this court has said a the existence of a scheme to defraud. Of course, wire fraud and bank fraud are different statutes, but they both have that same phrase, a scheme or artifice to defraud. And they are both governed by Section 1346, which provides a definition for that phrase. So I think that even in that scenario, even applying the categorical approach, bank fraud has involves rather an element as an element, a scheme, and which is what occurred here could be part of the restitution order, in which case Wells Fargo is a victim. But again, I don't think that this court needs to even get to this result, especially if there's no dispute about amount. If I can answer any further questions for the court. It's the better practice just to name the victim with the amount, in other words, is there a lesson learned here or is this just the way it's going to be going forward? I'm not sure about that, Your Honor. I think that there's I believe it's the Peterson case, which talks about, you know, at the time that the plea agreement is drafted, these matters may not be understood or known. And requiring the victims to be in the plea agreement could come in the way of reaching an agreement at all. So I think that the flexibility is important in drafting plea agreements and moving forward. But the fact remains that defendant agreed to the particular amount in this case. And I think that that was clearly above just the loan connected to count one. So he was certainly on notice that the losses had exceeded that amount. I think you're on your your honor, I think you're muted. Judge Phillips, are you on mute? Judge Phillips, he's waving me away. I don't think he can hear you. Oh, dear. Judge Phillips, you're muted. Paul, can you help him from your. I just sent him a request, Judge. Stop the clock. Technology. Relatively minor problems. Yeah. You could hold up a cue card, maybe. Judge Phillips, you may get a prompt from me to unmute yourself. If you just hit OK, it should unmute it for you. No. We'll give it a try and if necessary, we'll take a short break. Sure. Greg, am I back? You're back. OK. Did you have a question? No, I'm I'm fine. Thank you. OK, counsel. If the court has any further questions, we would encourage a firm restitution order in the sentence in all respects. Thank you. We appreciate your arguments. Mr. Tejada, you have some rebuttal. Thank you, Your Honor. I want to talk about just to be clear, we are challenging the who under the MVRA, which will necessarily affect the amount, but we are not challenging the amount because I don't believe that that is something that we can bring up here and challenge on plain error review. Second, the procedural history of this is that for the first time ever, Mr. Williams learns about Wells Fargo during the PSR. I don't think that's forfeiture. I think that it's failure to object and I think that's plain error. And that's why we're here. But the plea paperwork and the statement in advance of plea specifically says one four six million dollars. There is nothing in the indictment, the plea paperwork or the statement in advance of plea referring to Wells Fargo. So the reality is, is they found out about it during the PSR process. Well, during the PSR process and from that time forward, he knew that and there was no objection. So that that has to be the basis of your relying on plain error. But he did know it from the PSR and even during the sentencing process. I would agree. He knew it and they didn't object. And that's why we're here on plain error, unfortunately. But I still think that if the court exceeds its authority for ordering restitution to a party that is not eligible for restitution under the MVRA's definition of a victim, then the court, the district court still plainly erred and all four prongs are met. Well, you still haven't convinced me, counsel, of the third and fourth prong. What's of plain error? Well, the court, the cases that we've cited in our brief, your honor, in our position state that if a court exceeds its legal authority to order restitution or any legal authority that necessarily affects somebody's substantial rights and that affects the integrity of the judicial proceedings because a court has gone outside of its scope of authority. So that would be our response, your honor. Unless there are any other questions for the court, we would ask from the court. We would ask the court to remand this matter for resentencing on both the restitution as well as the imprisonment sentence. Thank you. Thank you, Mr. Ikeda, we appreciate the arguments. The case will be submitted and counsel are excused. Although you're welcome to stay tuned and listen to the rest of them.